## AFFIDAVIT OF COPY

**Name of Insured Hollis Burton State of Louisiana.  On this**

**30th Day of March, 2016 Before the undersigned authority personally appeared**

**Lisa Lunday, who, after Being sworn, deposes and states that she/he is Client**

**Representative for Americas Insurance Company of Louisiana and that this is a**

**True And correct copy including all Endorsements issued prior to this date of its**

**Policy Number 619616 as The same appears of record in the Service Office of this**

**Company in Bigfork, MT.**

_Lisa Lunday_
**Client Representative Signature**

**Subscribed and Sworn to me before me this 30th Day of March, 2016**

**Residing in Bigfork, Montana**
**My Commission Expires:**

9-9-2017

**Notary Public in and for the State of Montana**



MARY ANN QUIST
NOTARY PUBLIC for the
State of Montana
Residing at Bigfork, MT
My Commission Expires
September 9, 2017

Exhibit 2                                    1

 **Americas®**

Americas Insurance Company
Customer Service: 877-833-4163

Homeowners Policy Declaration
Renewal
**Insured Copy**

PO Box 3033
Bigfork, MT 59911    Mortgagee Bill

DECLARATION EFFECTIVE: 11/30/2013

| Policy Number | From | To | | Agent Code |
|---|---|---|---|---|
| 619616 | 11/30/2013 | 11/30/2014 | 12:01 AM STANDARD TIME AT INSURED LOCATION | 4214 |

| NAMED INSURED AND ADDRESS: | AGENT: |
|---|---|

HOLLIS BURTON
2161 Pleasure St
New Orleans, LA 70122

Robert Sheard Ins Agency Inc
6001 N. Claiborne Ave.
New Orleans, LA 70117
Phone#: (504) 947-3044

**INSURED LOCATION:**

HOLLIS BURTON
2161 Pleasure St
New Orleans, LA 70122

**PREMIUM SUMMARY**

| BASIC COVERAGES PREMIUM | ATTACHED ENDORSEMENTS PREMIUM | POLICY FEES / SURCHARGES | TOTAL POLICY PREMIUM |
|---|---|---|---|
| $2,133.00 | $43.00 | $141.00 | $2,317.00 |

| PRODUCT | CONST TYPE | YEAR | USE | # FAMILY | OWNER OCC | PROT CLASS | TERRITORY |
|---|---|---|---|---|---|---|---|
| HO3 | Frame | 2012 | Primary | One | Owner | 2 | 3942 |

**Coverages - Section I**

| | Limits/Pct | Premium |
|---|---|---|
| Coverage A - Dwelling | $145,600 | $2,133 |
| Coverage B - Other Structures | $14,560 | $0 |
| Coverage C - Personal Property | $72,800 | $0 |
| Coverage D - Loss of Use | $29,120 | $0 |

**Coverages - Section II**

| | | |
|---|---|---|
| Coverage E - Liability | $100,000 | $0 |
| Coverage F - Medical Payments | $1,000 | $0 |

Policy Fee  $60
Citizens Property Insurance Corporation   Assessment $0 (0.0000)
Citizens Property Insurance Corporation High Risk Emergency Assessment $81 (0.0374)

|  | | |
|---|---|---|
| | **Total Policy Premium** | $2,317 |
| | **ORDINANCE OR LAW** 10% of A | |
| All Other Perils Deductible | $1,000 | |
| Wind/Hail or Hurricane Deductible | $2,912 | |

AIC REN DEC 01 11

Page 1   of  2

Insured Copy
10/6/2013

Exhibit 2                                    2

 **Americas**

Americas Insurance Company
Customer Service: 877-833-4163

Homeowners Policy Declaration
Renewal
**Insured Copy**

PO Box 3033
Bigfork, MT 59911    Mortgagee Bill

DECLARATION EFFECTIVE: 11/30/2013

| Policy Number | From | To | | Agent Code |
|---|---|---|---|---|
| 619616 | 11/30/2013 | 11/30/2014 | 12:01 AM STANDARD TIME AT INSURED LOCATION | 4214 |

**NAMED INSURED AND ADDRESS:**                    **AGENT:**

HOLLIS BURTON
2161 Pleasure St
New Orleans, LA 70122

Robert Sheard Ins Agency Inc
6001 N. Claiborne Ave.
New Orleans, LA 70117
Phone#: (504) 947-3044

------------------------ **MORTGAGEE(S) / ADDITIONAL INTEREST(S)** ------------------------

1st Mortgagee: JP MORGAN CHASE BANK NA, ISAOA ATIMA, PO BOX 47020, ATLANTA, GA 30362;  Loan#: 1435372792

2nd Mortgagee: THE CITY OF NEW ORLEANS OFFICE OF COMMUNITY DEVELO, 1300 PERDIDO ST, NEW ORLEANS, LA 70112-2125;  Loan#: TBA

------------------------ **POLICY FORMS AND ENDORSEMENTS** ------------------------

| Number | Edition | Description | Limits/Pct | Premium |
|---|---|---|---|---|
| HO 00 03 | 10 00 | Homeowners 3 - Special Form | | $0 |
| HO 01 17 | 03 08 | Special Provisions - Louisiana | | $0 |
| HO P 002 | 04 07 | Important Information Required by Louisiana Dept of Ins | | $0 |
| IL P 001 | 01 04 | US Treasury Depts Office of Foreign Assets Control advisory notice to policyholders | | $0 |
| IL N 048 | 09 03 | Louisiana Fraud Statement | | $0 |
| HO 03 62 | 12 09 | Windstorm or Percentage Deductible - Louisiana | | $0 |
| HO 04 16 | 10 00 | Premises Alarm or Fire Protection System | | $0 |
| HO 04 10 | 10 00 | Additional Interests- Residence Premises | | $0 |
| HO 03 42 | 01 05 | Limited Fungi, Mold Wet or Dry Rot, or Bacteria | $10,000/$50,000 | $0 |
| HO 04 96 | 10 00 | No Liability Coverage For Home Day Care, Limited Property Coverage | | $0 |
| AIC PP | 01 11 | Americas Insurance Company Privacy Policy | | $0 |
| HO 04 46 | 10 00 | Inflation Guard | | $43 |

Property Coverage limit may increase at renewal due to an inflation factor to maintain insurance to the approximate replacement cost of your home.

This Policy does not protect you against loss due to flood. Flood Insurance is available through the Federal Government. Contact your agent to apply for coverage.

This replaces all previously issued policy declarations, if any.  This policy applies only to accidents, occurrences or losses which happen during the policy period shown above.  In case of property loss, only that part of loss over stated deductibles applies.  If payment is not received fifteen days prior to the policy renewal effective date, a notice of expiration stating that coverage will continue for fifteen days and will cease on the policy expiration date will be mailed to the insured, mortgagee and any other additional interests.

_____

Authorized Signature

October 6, 2013
_____

Date

AIC REN DEC 01 11

Insured Copy
10/6/2013

Exhibit 2

3

## IMPORTANT INFORMATION REQUIRED BY THE
## LOUISIANA DEPARTMENT OF INSURANCE

Homeowners Insurance Policy Coverage Disclosure Summary
This form is promulgated pursuant to LSA-R.S. 22:1332

THIS IS ONLY A SUMMARY OF YOUR COVERAGE AND DOES NOT AMEND, EXTEND, OR ALTER THE COVERAGES OR ANY OTHER PROVISIONS CONTAINED IN YOUR POLICY. INSURANCE IS A CONTRACT. THE LANGUAGE IN YOUR POLICY CONTROLS YOUR LEGAL RIGHTS AND OBLIGATIONS.

**READ YOUR INSURANCE POLICY
FOR COMPLETE POLICY TERMS AND CONDITIONS**

COVERAGE FOR WHICH PREMIUM WAS PAID:

| | |
|---|---|
| Coverage A - Dwelling | $145,600 |
| Coverage B - Other Structures | $14,560 |
| Coverage C - Personal Property | $72,800 |
| Coverage D - Loss of Use | $29,120 |
| Coverage E - Liability | $100,000 |
| Coverage F - Medical Payments | $1,000 |

Deductibles

This policy sets forth certain deductibles that will be applied to claims for damages. When applicable, a deductible will be subtracted from your total claim and you will be paid the balance subject to applicable coverage limits.

• You may be able to reduce your premium by increasing your deductible. Contact your producer (agent) or insurer for details.

NOTICE: This policy does set forth a separate deductible for covered lossess caused by named storm as defined in the policy:

Exhibit 2                    4

## Separate Deductible Example-Hurricane, Wind or Named Storm Damage.

If applicable, the following illustrates how a separate deductible applying to hurricane,
wind or named storm damage is applied under your policy:

If the total insured value of the dwelling or Coverage A is $200,000.00 and you have
a 2% hurricane, wind, or named storm deductible, then your hurricane, wind or
named storm deductible would be $200,000.00 X .02% = $4,000.00.

### Losses:

| | |
|---|---|
| Coverage A - Dwelling | $ 15,000.00 |
| Coverage B - Other Structures | $  2,500.00 |
| Coverage C- Personal Property | $  3,000.00 |
| Coverage D - Loss of Use | $  2,000.00 |
| Total amount of all losses | $ 22,500.00 |
| Less 2% hurricane, wind or named storm deductible | $  4,000.00 |
| Net payment to insured | $ 18,500.00 |

Exhibit 2                                    5

TO SEE EXACTLY HOW YOUR SEPARATE HURRICANE, WIND OR NAMED STORM DEDUCTIBLE WILL APPLY, PLEASE REFER TO YOUR POLICY.

<u>LIMITATIONS OR EXCLUSIONS UNDER THIS POLICY</u>

<u>FLOOD</u> - Flood damage is not covered, regardless of how caused, when flood is the peril that causes the loss. Flood water includes but is not limited to storm surge, waves, tidal water, overflow of a body of water, whether driven by wind or not.

*Flood Insurance* may be available through the National Flood Insurance Program (NFIP). NFIP flood insurance may provide coverage for damage to your dwelling and/or contents subject to the coverage limits and terms of the policy.

*Excess Flood Insurance* may be available under a separate policy from this or another insurer if the amount of the primary flood insurance is not enough to cover the value of your property.

- You may contact your producer (agent) or insurer for more information on the NFIP and excess flood insurance.

<u>MOLD</u> - Damage caused solely by mold is not covered under this policy.

**FOR ALL OTHER LIMITATIONS OR EXCLUSIONS REFER TO YOUR POLICY FOR COMPLETE DETAILS ON TERMS AND PROVISIONS**

| | |
|---|---|
| <u>CLAIM FILING</u><br><br><u>PROCESS</u> | There may be time limitations for filing a claim and filing of a satisfactory proof of loss. There may also be time limitations for repairing and replacing damaged property that could cause you to not recover the replacement cost for the insured loss of your property, if applicable |
| <u>PAYMENT OF</u><br><br><u>PROCESS</u> | There may be time limitations for filing a claim and filing of a satisfactory proof of loss. There may also be time limitations for repairing and replacing damaged property that could cause you to not recover the replacement cost for the insured loss of your property, if applicable |

> • ACV is the amount needed to repair or replace the damaged or destroyed property, minus the depreciation.
>
> • RC involves the initial payment of actual cash value (ACV) of a loss, and the subsequent payment of the additional amount that is actually and necessarily expended to repair or replace the damaged or destroyed property.

**      Refer to your policy for the terms and conditions describing how a particular loss is to be paid.

<u>PAYMENT AND ADJUSTMENT OF CLAIMS</u>

Pursuant to LSA-R.S. 22:1892 and 22:1973, except in the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim and/or a claim for reasonable medical expenses within fourteen (14) days after notification of loss by the claimant.

In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty (30) days after notification of loss by the claimant unless the Commissioner of Insurance promulgates a rule to extend the time period for initiating a loss adjustment for damages arising from a presidentially declared emergency or disaster or a gubernatorially declared emergency or disaster for up to an additional thirty (30) days. Thereafter, one additional extension of the period of time for initiating a loss adjustment may be allowed by the Commissioner of Insurance if approved by the Senate Committee on Insurance and the House Committee on Insurance.

All insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty (30) days after the receipt of satisfactory proof of loss of that claim.

Failure to make such payment within thirty (30) days after receipt of such satisfactory written proofs and demand thereof or failure to make a written offer to settle any property damage claim, including a third-party claim,

Exhibit 2                                                    7

within thirty (30) days after receipt of a satisfactory proof of loss of that claim may result in a late penalty against the insurer in addition to the payment of the claim.

If the insurer is found to be arbitrary, capricious, or without probable cause in settling any property damage claim, the insurer must pay the insured, in addition to the amount of the loss, fifty percent (50%) damages on the amount found to be due from the insurer to the insured, or one thousand dollars ($1,000.00), whichever is greater, as well as attorney fees and costs, if applicable.

EFFECTIVE JANUARY 1, 2010

Exhibit 2                                                        8

AIC PP 01 11

Americas Insurance Company takes protection and privacy of the personal information you entrust to us very seriously. The Gramm Leach Bailey Financial Services Modernization Act is a law that requires insurance companies to have processes in place that protect the confidentiality of your personal information. We use this personal information to provide you with the best insurance products and services available. Your privacy is important to us and this law reinforces our promise to protect your personal information. This **Privacy Policy** describes our personal information handling practices.

To allow us to serve the needs of our customers and to respond to those needs in a timely manner, Americas Insurance Company may collect information about you or your home and your property. This information is described below in **"The Personal Information We Collect"**.

## AMERICAS INSURANCE COMPANY PRIVACY POLICY

**The Personal Information We Collect** _Americas Insurance Company collects personal information about you in order to conduct business operations, provide customer service, improve existing products and offer new products and to satisfy legal and regulatory requirements.

We may collect the following types of information about you from the indicated sources:

> Information we receive directly from you, including information from applications, questionnaires, claim forms, claims interviews or other documents (such as your name, address, drivers' license number, social security number and types of coverage requested).

> Information about your transactions with us, our affiliates or others (such as products or services you purchased, account balances and payment history).

> Information we receive from consumer reporting agencies or from other non-affiliated sources. This information may include prior loss information, credit reports, motor vehicle reports and demographic information.

> Information on your home that we or an inspector from an independent company may obtain by visiting your property to inspect and report on its condition. Photos of your home and premises may be taken. In some instances, if we require additional information, we may need to enter your home to complete this inspection. In all instances, we will contact you to obtain approval and to schedule an appointment prior to the inspection visit.

> We do not collect or obtain any personal information from visitors to our web site by the use of an Internet "cookie", an online information collecting device.

**The Personal Information We Share** _Americas Insurance Company may disclose all of the personal information we collect, as described above, within the limitations described below.

**Sharing Personal Information With Others** _Americas Insurance Company may disclose personal information we collect in the normal process of conducting insurance operations to affiliated and non-

Exhibit 2                                    9

affiliated parties for processing, servicing and administering transactions on our behalf, such as insurance producers or agents, businesses that assist us with data processing, reinsurers, appraisers, auditors, claims adjusters, third party administrators and consumer reporting agencies as reasonably necessary in connection with any application, policy or claim involving you. We may also disclose your personal information in response to a subpoena, to detect or prevent fraud or to comply with an inquiry or requirement of a government agency or regulator or as otherwise permitted by law.

**Sharing Personal Information for Joint Marketing Purposes** _Americas Insurance Company may provide information to your insurance agent or broker, who may market insurance products and services on our behalf, and to third parties who perform functions for us. We do not currently share your information with non-affiliate companies that would use it to contact you about their own products and services.

**Confidentiality and Security of Personal Information** _Access to personal information is limited and allowed for business purposes only. The people who may have access to your information, including our employees, affiliates and persons or other organizations that represent us in servicing your policy and claims are obligated to protect your personal information and keep it confidential. Americas Insurance Company maintains physical, electronic and procedural safeguards to protect the security of your personal information.

**Personal Health Information** _Under certain circumstances, we may collect personal health information on customers for underwriting or claims purposes, such as information regarding an accident, disability or injury. Americas Insurance Company does not disclose your personal health information to others for the purposes of marketing to you.

**Personal Information of Former Customers** _Americas Insurance Company's personal information privacy policy applies to former customers.

**Changes in Privacy Policy** _Americas Insurance Company may choose to modify this policy at any time. We will notify customers of any modification of our privacy policy and provide you with a copy of our current privacy policy at least annually.

"Customer" and "you" mean any individual who obtains or has obtained a financial product or service from Americas Insurance Company that is to be used for personal, family or household purposes. This notice applies to customers only.

"Personal Information" means nonpublic personal information, which is defined by law as personally identifiable financial information that you provide or Americas Insurance Company otherwise obtains in connection with a transaction or any service performed for you by Americas Insurance Company. Personal information does not include publically available information as defined by applicable law.

12/2010 AIC Privacy Notice

Exhibit 2                    10

# IMPORTANT NOTICE
# REGARDING REFUNDABLE TAX CREDIT

Louisiana Revised Statute 47.6025 allows a **refundable tax credit by the Department of Revenue** for the Louisiana Citizens Property Insurance Corporation assessments resulting from Hurricanes Katrina and Rita that were paid by you.

The assessment is displayed on your declarations page as the FAIR Plan Assessment Fee.

1.  The form to be completed by <u>individuals</u> can be found at the following website (select year and then form R-540INS).  It contains instructions on how to file it with the Department of Revenue.  If you have any questions, contact the Department of Revenue Call Center at (225) 219-0102.

    **http://revenue.louisiana.gov/sections/taxforms/default.aspx?code=PSN**

2.  The form to be completed by <u>business entities</u> can be found at the following website: (select year and then form R-620INS).  It contains instructions on how to file with the Department of Revenue.  If you have any questions, contact the Department of Revenue Call Center at (225) 219-7462.

    **http://revenue.louisiana.gov/sections/taxforms/default.aspx?code=CIF**

Thank you for being a valued policyholder!

Exhibit 2                                                                                          11



# HOMEOWNER POLICY

## Americas Insurance Company

**400 Poydras Street**
**Suite 2000**
**New Orleans, LA  70130**

Customer Service: (877) 833-4163

Claims: (800) 742-3109

AIC HOJ 01 11

Exhibit 2                                    12

# HOMEOWNERS 3 – SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

A. In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

B. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in b. below, mean the following:

   a. Liability for "bodily injury" or "property damage" arising out of the:

      (1) Ownership of such vehicle or craft by an "insured";

      (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

      (3) Entrustment of such vehicle or craft by an "insured" to any person;

      (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

      (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   b. For the purpose of this definition:

      (1) Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

      (2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

      (3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

      (4) Motor vehicle means a "motor vehicle" as defined in 7. below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following:

      (1) One or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

      (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      (4) The rendering of home day care services to a relative of an "insured".

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

5. "Insured" means:

   a. You and residents of your household who are:

      (1) Your relatives; or

      (2) Other persons under the age of 21 and in the care of any person named above;

   b. A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

      (1) 24 and your relative; or

      (2) 21 and in your care or the care of a person described in a.(1) above; or

Copyright, Insurance Services Office, Inc., 1999

Exhibit 2

c. Under Section II:

(1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

(2) With respect to a "motor vehicle" to which this policy applies:

(a) Persons while engaged in your employ or that of any person included in **a.** or **b.** above; or

(b) Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II,** when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means:

a. The "residence premises";

b. The part of other premises, other structures and grounds used by you as a residence; and

(1) Which is shown in the Declarations; or

(2) Which is acquired by you during the policy period for your use as a residence;

c. Any premises used by you in connection with a premises described in **a.** and **b.** above;

d. Any part of a premises:

(1) Not owned by an "insured"; and

(2) Where an "insured" is temporarily residing;

e. Vacant land, other than farm land, owned by or rented to an "insured";

f. Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

g. Individual or family cemetery plots or burial vaults of an "insured"; or

h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

7. "Motor vehicle" means:

a. A self-propelled land or amphibious vehicle; or

b. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. "Bodily injury"; or

b. "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

b. One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means:

a. The one family dwelling where you reside;

b. The two, three or four family dwelling where you reside in at least one of the family units; or

c. That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

 Copyright, Insurance Services Office, Inc., 1999

Exhibit 2

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations.

## SECTION I – PROPERTY COVERAGES

### A. Coverage A – Dwelling

1. We cover:

   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

   a. Land, including land on which the other structures are located;

   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   c. Other structures from which any "business" is conducted; or

   d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### C. Coverage C – Personal Property

1. **Covered Property**

   We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

   a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

   b. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

2. **Limit For Property At Other Residences**

   Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

   a. Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

   b. In a newly acquired principal residence for 30 days from the time you begin to move the property there.

3. **Special Limits Of Liability**

   The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage C limit of liability.

   a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

   b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

 Copyright, Insurance Services Office, Inc., 1999

Exhibit 2

c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

d. $1,500 on trailers or semitrailers not used with watercraft of all types.

e. $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

f. $2,500 for loss by theft of firearms and related equipment.

g. $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollow-ware, tea sets, trays and trophies made of or including silver, gold or pewter.

h. $2,500 on property, on the "residence premises", used primarily for "business" purposes.

i. $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories j. and k. below.

j. $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category j.

k. $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category k.

4. **Property Not Covered**

We do not cover:

a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b. Animals, birds or fish;

c. "Motor vehicles".

(1) This includes:

(a) Their accessories, equipment and parts; or

(b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

The exclusion of property described in (a) and (b) above applies only while such property is in or upon the "motor vehicle".

(2) We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

(a) Used solely to service an "insured's" residence; or

(b) Designed to assist the handicapped;

d. Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flare-craft and air cushion vehicles;

f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in E.10. Landlord's Furnishings under Section I – Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

(1) Books of account, drawings or other paper records; or

(2) Computers and related equipment.

We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

     Copyright, Insurance Services Office, Inc., 1999

Exhibit 2                    16

**j.** Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages; or

**k.** Water or steam.

## D. Coverage D – Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

### 1. Additional Living Expense

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

### 2. Fair Rental Value

If a loss covered under Section **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

## E. Additional Coverages

### 1. Debris Removal

**a.** We will pay your reasonable expense for the removal of:

**(1)** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

**(2)** Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

**b.** We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

**(1)** Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

**(2)** A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C;**

provided the tree(s):

**(3)** Damage(s) a covered structure; or

**(4)** Does not damage a covered structure, but:

**(a)** Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

**(b)** Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

### 2. Reasonable Repairs

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

Copyright, Insurance Services Office, Inc., 1999

Exhibit 2

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

**(1)** Increase the limit of liability that applies to the covered property; or

**(2)** Relieve you of your duties, in case of a loss to covered property, described in **B.4.** under Section I – Conditions.

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

**a.** Fire or Lightning;

**b.** Explosion;

**c.** Riot or Civil Commotion;

**d.** Aircraft;

**e.** Vehicles not owned or operated by a resident of the "residence premises";

**f.** Vandalism or Malicious Mischief; or

**g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

**a.** We will pay up to $500 for:

**(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

**(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

**(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

**(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

**b.** We do not cover:

**(1)** Use of a credit card, electronic fund transfer card or access device:

**(a)** By a resident of your household;

**(b)** By a person who has been entrusted with either type of card or access device; or

**(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

**(2)** Loss arising out of "business" use or dishonesty of an "insured".

**c.** If the coverage in **a.** above applies, the following defense provisions also apply:

**(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

**(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

Copyright, Insurance Services Office, Inc., 1999

Exhibit 2

**7. Loss Assessment**

**a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A**, other than:

**(1)** Earthquake; or

**(2)** Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**c.** Paragraph **P.** Policy Period under Section **I** – Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

**a.** With respect to this Additional Coverage:

**(1)** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

**(2)** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

**(3)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

**(4)** A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**b.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

**(1)** The Perils Insured Against named under Coverage **C**;

**(2)** Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

**(3)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

**(4)** Weight of contents, equipment, animals or people;

**(5)** Weight of rain which collects on a roof; or

**(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**c.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

**d.** This coverage does not increase the limit of liability that applies to the damaged covered property.

**9. Glass Or Safety Glazing Material**

**a.** We cover:

**(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

**(2)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

**(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

 Copyright, Insurance Services Office, Inc., 1999

Exhibit 2

**b.** This coverage does not include loss:

   **(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

   **(2)** On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

**c.** This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C**, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

**a.** You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

   **(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

   **(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

   **(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

**c.** We do not cover:

   **(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

   **(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C**.

This coverage does not increase the limits of liability that apply to the damaged covered property.

**SECTION I – PERILS INSURED AGAINST**

**A. Coverage A – Dwelling And Coverage B – Other Structures**

**1.** We insure against risk of direct physical loss to property described in Coverages **A** and **B**.

**2.** We do not insure, however, for loss:

   **a.** Excluded under Section I – Exclusions;

   **b.** Involving collapse, except as provided in **E.8.** Collapse under Section I – Property Coverages; or

   **c.** Caused by:

      **(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

         **(a)** Maintain heat in the building; or

Copyright, Insurance Services Office, Inc., 1999

Exhibit 2

**(b)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

**(a)** Fence, pavement, patio or swimming pool;

**(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

**(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

**(d)** Pier, wharf or dock;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(5)** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

**(a)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

**(b)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

**(a)** Wear and tear, marring, deterioration;

**(b)** Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

**(c)** Smog, rust or other corrosion, or dry rot;

**(d)** Smoke from agricultural smudging or industrial operations;

**(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C**.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**(g)** Birds, vermin, rodents, or insects; or

**(h)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

**(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

Exhibit 2

**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section I – Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B. Coverage C – Personal Property**

We insure for direct physical loss to the property described in Coverage C caused by any of the following perils unless the loss is excluded in Section I – Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

**7. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

**9. Theft**

**a.** This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

**b.** This peril does not include loss caused by theft:

**(1)** Committed by an "insured";

**(2)** In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(3)** From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

**(4)** That occurs off the "residence premises" of:

**(a)** Trailers, semitrailers and campers;

**(b)** Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

**(c)** Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

**10. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

Copyright, Insurance Services Office, Inc., 1999  HO 00 03 10 00

Exhibit 2  22

**12. Accidental Discharge Or Overflow Of Water Or Steam**

   **a.** This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

   **b.** This peril does not include loss:

      **(1)** To the system or appliance from which the water or steam escaped;

      **(2)** Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

      **(3)** On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

      **(4)** Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

   **c.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

   **d.** Section I – Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

**13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

**14. Freezing**

   **a.** This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

      **(1)** Maintain heat in the building; or

      **(2)** Shut off the water supply and drain all systems and appliances of water.

   However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   **b.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**15. Sudden And Accidental Damage From Artificially Generated Electrical Current**

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**16. Volcanic Eruption**

This peril does not include loss caused by earthquake, land shock waves or tremors.

## SECTION I – EXCLUSIONS

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

   **1. Ordinance Or Law**

   Ordinance Or Law means any ordinance or law:

      **a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section I – Property Coverages;

      **b.** The requirements of which result in a loss in value to property; or

      **c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This Exclusion **A.1.** applies whether or not the property has been physically damaged.

   **2. Earth Movement**

   Earth Movement means:

      **a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

Exhibit 2

**b.** Landslide, mudslide or mudflow;

**c.** Subsidence or sinkhole; or

**d.** Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion **A.2.** does not apply to loss by theft.

**3. Water Damage**

Water Damage means:

**a.** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**b.** Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

**c.** Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **M. Nuclear Hazard** Clause under Section I – Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A, B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying, siting;

**b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

Copyright, Insurance Services Office, Inc., 1999

HO 00 03 10 00

Exhibit 2

24

## SECTION I – CONDITIONS

### A. Insurable Interest And Limit Of Liability

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

### B. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. The interests of all "insureds" and all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

   d. Changes in title or occupancy of the property during the term of the policy;

   e. Specifications of damaged buildings and detailed repair estimates;

   f. The inventory of damaged personal property described in **6.** above;

   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   h. Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

### C. Loss Settlement

In this Condition **C.**, the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section I – Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   c. Structures that are not buildings; and

   d. Grave markers, including mausoleums;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(1)** The actual cash value of that part of the building damaged; or

**(2)** That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

**(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

**(1)** Less than 5% of the amount of insurance in this policy on the building; and

**(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **C. Loss Settlement,** provided you notify us of your intent to do so within 180 days after the date of loss.

**D. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**E. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**F. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

Copyright, Insurance Services Office, Inc., 1999
HO 00 03 10 00

Exhibit 2

26

**H. Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;
2. There is an entry of a final judgment; or
3. There is a filing of an appraisal award with us.

**J. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**K. Mortgage Clause**

1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **E.** Appraisal, **G.** Suit Against Us and **I.** Loss Payment under Section **I** – Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**L. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**M. Nuclear Hazard Clause**

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**N. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**O. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

**P. Policy Period**

This policy applies only to loss which occurs during the policy period.

**Q. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**R. Loss Payable Clause**

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

**A. Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

**B. Coverage F – Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

**A. "Motor Vehicle Liability"**

1. Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

   a. Is registered for use on public roads or property;

   b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

   c. Is being:

      (1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

      (2) Rented to others;

      (3) Used to carry persons or cargo for a charge; or

      (4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

   a. In dead storage on an "insured location";

   b. Used solely to service an "insured's" residence;

   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

      (1) Being used to assist a handicapped person; or

      (2) Parked on an "insured location";

   d. Designed for recreational use off public roads and:

      (1) Not owned by an "insured"; or

      (2) Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions B. 6.a., b., d., e. or h.; or

   e. A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

      (1) A golfing facility and is parked or stored there, or being used by an "insured" to:

         (a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

Exhibit 2    28

(b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

(c) Cross public roads at designated points to access other parts of the golfing facility; or

(2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B. "Watercraft Liability"**

1. Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

   a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

   b. Rented to others;

   c. Used to carry persons or cargo for a charge; or

   d. Used for any "business" purpose.

2. If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

   a. Is stored;

   b. Is a sailing vessel, with or without auxiliary power, that is:

      (1) Less than 26 feet in overall length; or

      (2) 26 feet or more in overall length and not owned by or rented to an "insured"; or

   c. Is not a sailing vessel and is powered by:

      (1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

         (a) 50 horsepower or less and not owned by an "insured"; or

         (b) More than 50 horsepower and not owned by or rented to an "insured"; or

      (2) One or more outboard engines or motors with:

         (a) 25 total horsepower or less;

         (b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

         (c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

(d) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

   (i) You declare them at policy inception; or

   (ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This policy does not cover "hovercraft liability".

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

1. **Expected Or Intended Injury**

   "Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

   a. Is of a different kind, quality or degree than initially expected or intended; or

   b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

   However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

2. **"Business"**

   a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

   This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   b. This Exclusion **E.2.** does not apply to:

      (1) The rental or holding for rental of an "insured location";

(a) On an occasional basis if used only as a residence;

(b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

**a.** Owned by an "insured";

**b.** Rented to an "insured"; or

**c.** Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and E.**4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**F. Coverage E – Personal Liability**

Coverage E does not apply to:

**1.** Liability:

**a.** For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section II – Additional Coverages;

**b.** Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(1) That directly relate to the ownership, maintenance or use of an "insured location"; or

(2) Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in **a.** above or elsewhere in this policy;

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**4.** "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

**a.** Workers' compensation law;

Copyright, Insurance Services Office, Inc., 1999

Exhibit 2

**b.** Non-occupational disability law; or

**c.** Occupational disease law;

**5.** "Bodily injury" or "property damage" for which an "insured" under this policy:

**a.** Is also an insured under a nuclear energy liability policy issued by the:

**(1)** Nuclear Energy Liability Insurance Association;

**(2)** Mutual Atomic Energy Liability Underwriters;

**(3)** Nuclear Insurance Association of Canada;

or any of their successors; or

**b.** Would be an insured under such a policy but for the exhaustion of its limit of liability; or

**6.** "Bodily injury" to you or an "insured" as defined under Definitions **5.a.** or **b.**

This exclusion also applies to any claim made or suit brought against you or an "insured":

**a.** To repay; or

**b.** Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

## G. Coverage F – Medical Payments To Others

Coverage **F** does not apply to "bodily injury":

**1.** To a "residence employee" if the "bodily injury":

**a.** Occurs off the "insured location"; and

**b.** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**2.** To any person eligible to receive benefits voluntarily provided or required to be provided under any:

**a.** Workers' compensation law;

**b.** Non-occupational disability law; or

**c.** Occupational disease law;

**3.** From any:

**a.** Nuclear reaction;

**b.** Nuclear radiation; or

**c.** Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

**d.** Any consequence of any of these; or

**4.** To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

## A. Claim Expenses

We pay:

**1.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

**2.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

**3.** Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

**4.** Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

## B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

## C. Damage To Property Of Others

**1.** We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

**2.** We will not pay for "property damage":

**a.** To the extent of any amount recoverable under Section **I**;

**b.** Caused intentionally by an "insured" who is 13 years of age or older;

**c.** To property owned by an "insured";

**d.** To property owned by or rented to a tenant of an "insured" or a resident in your household; or

**e.** Arising out of:

**(1)** A "business" engaged in by an "insured";

**(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

**(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

 Copyright, Insurance Services Office, Inc., 1999

Exhibit 2

This exclusion **e.(3)** does not apply to a "motor vehicle" that:

    **(a)** Is designed for recreational use off public roads;

    **(b)** Is not owned by an "insured"; and

    **(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

## D. Loss Assessment

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

    **a.** "Bodily injury" or "property damage" not excluded from coverage under Section II – Exclusions; or

    **b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

        **(1)** Is elected by the members of a corporation or association of property owners; and

        **(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph **I.** Policy Period under Section II – Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

    **a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

    **b.** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## SECTION II – CONDITIONS

### A. Limit Of Liability

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

### C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

    **a.** The identity of the policy and the "named insured" shown in the Declarations;

    **b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

    **c.** Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

    **a.** To make settlement;

    **b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

Copyright, Insurance Services Office, Inc., 1999

Exhibit 2

   c. With the conduct of suits and attend hearings and trials; and

   d. To secure and give evidence and obtain the attendance of witnesses;

5. With respect to **C. Damage To Property Of Others** under Section II – Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

1. The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

1. No action can be brought against us unless there has been full compliance with all of the terms under this Section II.

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**SECTIONS I AND II – CONDITIONS**

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

   a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

Exhibit 2

33

c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

(1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

(2) If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

3. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** – Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2. "Insured" includes:

a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Exhibit 2                    34

HOMEOWNERS
HO 01 17 03 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS – LOUISIANA

**SECTION I – PROPERTY COVERAGES**

**C. Coverage C – Personal Property**

Paragraph **4.c.(2)(a)** is replaced by the following:

**4. Property Not Covered**

  **c.** "Motor vehicles"

    **(2)** We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

      **(a)** Used to service an "insured's" residence; or

(This is Paragraph **A.4.c.(2)(a)** in Form **HO 00 04** and **B.4.c.(2)(a)** in Form **HO 00 06.**)

**E. Additional Coverages**

**2. Reasonable Repairs** is replaced by the following:

**2. Reasonable Repairs**

We will pay the reasonable cost incurred by you for necessary repairs made solely to protect covered property from further damage if a Peril Insured Against causes the loss. This coverage does not increase the limit of liability that applies to the property being repaired.

(This is Paragraph **C.2.** in Form **HO 00 04** and **D.2.** in Form **HO 00 06.**)

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money** is replaced by the following:

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

**a.** We will pay up to $500 for:

  **(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

  **(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

  **(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

  **(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

**b.** We do not cover:

  **(1)** Use of a credit card, electronic fund transfer card or access device:

    **(a)** By a resident of your household;

    **(b)** By a person who has been entrusted with either type of card or access device; or

    **(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed.

  **(2)** Loss arising out of "business" use or dishonesty of an "insured".

**c.** If the coverage in **a.** applies, the following defense provisions also apply:

  **(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when our limit of liability for the loss has been exhausted by payment of a judgment or settlement.

  **(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

  **(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

(This is Paragraph **C.6.** in Form **HO 00 04** and **D.6.** in Form **HO 00 06.**)

© ISO Properties, Inc., 2007

Exhibit 2

35

**SECTION I – EXCLUSIONS**

**8. Intentional Loss** is replaced by the following:

**8. Intentional Loss,** meaning any loss arising out of any act committed:

  **a.** With respect to loss caused by fire;

    **(1)** By or at the direction of the "insured"; and

    **(2)** With the intent to cause a loss.

  **b.** With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this policy;

    **(1)** By you or at your direction; and

    **(2)** With the intent to cause a loss.

(This is Exclusion **A.8.** in Forms **HO 00 03** and **HO 00 05.**)

**SECTION I – CONDITIONS**

**B. Duties After Loss**

Paragraph **8.** is replaced by the following:

**8.** Send to us your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

  **a.** The time and cause of loss;

  **b.** The interests of all "insureds" and all others in the property involved and all liens on the property;

  **c.** Other insurance which may cover the loss;

  **d.** Changes in title or occupancy of the property during the term of the policy;

  **e.** Specifications of damaged buildings and detailed repair estimates;

  **f.** The inventory of damaged personal property described in **6.** above;

  **g.** Receipts for additional living expenses incurred and records that support the fair rental value loss; and

  **h.** Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

This proof of loss must be sent to us within:

    **(1)** 180 days after our request, if the loss results from a catastrophic event for which a state of disaster or emergency was declared pursuant to law by civil officials; however, this 180 day period does not commence until the state of emergency or disaster has ended and you have access to your property; or

    **(2)** 60 days after our request in all other cases.

**C. Loss Settlement**

Under Forms **HO 00 02, HO 00 03** and **HO 00 05,** Paragraph **2.a.(2)** is replaced by the following:

    **(2)** The replacement cost of that part of the building damaged with material of like kind and quality; or

**I. Loss Payment** is replaced by the following:

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. The undisputed portion of the loss will be payable within 30 days after we receive your proof of loss.

**K. Mortgage Clause**

Paragraph **3.** is replaced by the following:

**3.** If this policy is cancelled by us, the mortgagee will be notified:

  **a.** At least 10 days before the date cancellation takes effect if we cancel for nonpayment of premium; or

  **b.** At least 30 days before the date cancellation takes effect if we cancel for any other reason.

If the policy is not renewed by us, the mortgagee will be notified at least 30 days before the date nonrenewal takes effect.

(This Condition does not apply to Form **HO 00 04.**)

**Q. Concealment Or Fraud** is replaced by the following:

**Q. Concealment Or Fraud**

**1.** With respect to loss caused by fire, we do not provide coverage to the "insured" who, whether before or after a loss, has:

  **a.** Intentionally concealed or misrepresented any material fact or circumstance;

  **b.** Engaged in fraudulent conduct; or

  **c.** Made false statements;

relating to this insurance.

**2.** With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this policy, we provide no coverage for loss if, whether before or after a loss, one or more "insureds" have:

  **a.** Intentionally concealed or misrepresented any material fact or circumstance;

  **b.** Engaged in fraudulent conduct; or

  **c.** Made false statements;

relating to this insurance.

 © ISO Properties, Inc., 2007 HO 01 17 03 08

Exhibit 2

36

3. However, if the conduct specified above is in relation to the procurement of the contract or occurs subsequent to the issuance of the contract, but if known to us would have caused us not to issue the policy, coverage will only be denied if the conduct was committed with the intent to deceive.

(This is Condition **P.** in Form **HO 00 04.**)

## SECTION II – LIABILITY COVERAGES

**A. Coverage E – Personal Liability,** Paragraph **1.** is replaced by the following:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable; and

## SECTION II – EXCLUSIONS

**A. "Motor Vehicle Liability"**

Paragraph **2.b.** is replaced by the following:

2. If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

    b. Used to service an "insured's" residence;

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Paragraph **1.** is replaced by the following in all forms and Endorsement **HO 24 73:**

1. **Expected Or Intended Injury**

    With respect to loss:

    a. Caused by fire; which is expected or intended by the "insured" even if the "bodily injury" or "property damage":

        (1) Is of a different kind, quality, or degree than initially expected or intended; or

        (2) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

    However, this Exclusion **E.1.a.** does not apply to "bodily injury" resulting from the use of reasonable force by the "insured" to protect persons or property.

    b. Caused by a peril other than fire and with respect to all "insureds" covered under this policy which is expected or intended by one or more "insureds" even if the "bodily injury" or "property damage":

        (1) Is of a different kind, quality, or degree than initially expected or intended; or

        (2) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **E.1.b.** does not apply to "bodily injury" resulting from the use of reasonable force by one or more "insureds" to protect persons or property.

**F. Coverage E – Personal Liability**

Paragraph **6.** does not apply in all forms and Endorsement **HO 24 73.**

## SECTION II – CONDITIONS

**F. Suit Against Us** does not apply.

**J. Concealment Or Fraud** is replaced by the following:

**J. Concealment Or Fraud**

1. We do not provide coverage to one or more "insureds" who, whether before or after a loss, have:

    a. Intentionally concealed or misrepresented any material fact or circumstance;

    b. Engaged in fraudulent conduct; or

    c. Made false statements;

    relating to this insurance.

2. However, if the conduct specified above is in relation to the procurement of the contract or occurs subsequent to the issuance of the contract, but if known to us would have caused us not to issue the policy, coverage will only be denied if the conduct was committed with the intent to deceive.

## SECTIONS I AND II – CONDITIONS

**C. Cancellation**

Paragraphs **2., 3.** and **4.** are replaced by the following:

2. The following applies with respect to premium payments due on new and renewal policies, including installment payments:

    a. If your premium payment check or other negotiable instrument is returned to us or our agent or a premium finance company because it is uncollectible for any reason, we may cancel the policy subject to Paragraphs **b.** and **c.** below.

    b. We may cancel the policy effective from the date the premium payment was due, by sending you written notice by certified mail, or by delivering such notice to you within 10 days of the date that we receive notice of the returned check or negotiable instrument.

© ISO Properties, Inc., 2007

Exhibit 2

**c.** The cancellation notice will also advise you that the policy will be reinstated effective from the date the premium payment was due, if you present to us a cashier's check or money order for the full amount of the returned check or other negotiable instrument within 10 days of the date that the cancellation notice was mailed.

**3.** The following applies if **2.** above does not apply.

We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

**a.** When you have not paid the premium, regardless of the period of time this policy has been in effect, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

**c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us except as provided in Item **3.e.** below, we may cancel:

**(1)** If there has been a material misrepresentation of fact with the intent to deceive:

  **(a)** In the procurement of the contract; or

  **(b)** At any other time since the policy was issued;

which if known to us would have caused us not to issue the policy; or

**(2)** If the risk has changed substantially since the policy was issued.

This can be done by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

**d.** When this policy is written for a period of:

**(1)** More than one year; or

**(2)** Three years or less;

we may cancel for any reason at anniversary by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

**e.** When this policy has been in effect and renewed for more than three years, we may cancel for any one of the following:

**(1)** If you have committed fraud with the intent to deceive:

  **(a)** In the procurement of the contract; or

  **(b)** At any other time since the policy was issued;

**(2)** If the insured risk has undergone a material change;

**(3)** If you have filed two or more claims that are not the result of an incident which is:

  **(a)** Due directly to forces of nature; and

  **(b)** Exclusively without human intervention;

within three years; or

**(4)** If the continuation of this policy endangers our solvency.

This can be done by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

We will not, however, cancel this policy, regardless of the period of time this policy has been in effect, based solely upon a loss caused by an Act of God. An Act of God means an incident due directly to natural causes and exclusively without human intervention.

**4.** If this policy is cancelled, we will return any premium refund due, subject to Paragraphs **a., b.** and **c.** below. The cancellation will be effective even if we have not made or offered a refund.

**a.** If you cancel this policy, we will refund the return premium, if any, within 30 days after the date cancellation takes effect. The return premium shall be computed on a pro rata basis, subject to the minimum premium requirements.

© ISO Properties, Inc., 2007 HO 01 17 03 08

Exhibit 2 38

b. If we cancel this policy, and the return premium is not refunded with the notice of cancellation, we will refund it within a reasonable time after the date cancellation takes effect. We will send the refund to you, or your agent unless **c.** below applies. If the premium is refunded to your agent, we will notify you, at the time of cancellation, that a return of unearned premium may be generated by the cancellation.

c. If we cancel based on Paragraph **2.** above, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in **2.c.** If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

**D. Nonrenewal** is replaced by the following:

**D. Nonrenewal**

1. We may elect not to renew this policy, subject to the provisions of Paragraphs **2.** and **3.** below. We may do so by delivering to you and any other known person shown by the policy to have an interest in any loss which may occur thereunder or mailing to you at your mailing address shown in the Declarations and to any other known person shown by the policy to have an interest in any loss which may occur thereunder, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

2. If this policy has been in effect and renewed with us for more than three years, we will not exercise our right of nonrenewal except:

   a. When you have not paid the premium;

   b. If you have committed fraud;

c. If the insured risk has undergone a substantial change;

d. If you have filed two or more claims that are not the result of an incident which is:

   (i) Due directly to forces of nature; and

   (ii) Exclusively without human intervention;

   within three years; or

e. If the continuation of this policy endangers our solvency.

3. We will not, however, exercise our right of nonrenewal, regardless of the period of time this policy has been in effect with us, based solely upon a loss caused by an Act of God. An Act of God means an incident due directly to natural causes and exclusively without human intervention.

**F. Subrogation**

The following paragraph is added:

If we pay an "insured" for a loss caused by another "insured" who intentionally commits, or directs another to commit, any act that results in loss by fire, the rights of the "insured" to recover damages from the "insured" who intentionally committed, or directed another to commit, such an act are transferred to us to the extent of our payment. The "insured" may not waive such rights.

All other provisions of this policy apply.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

Exhibit 2

IL N 048 09 03

# LOUISIANA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

© ISO Properties, Inc., 2003

Exhibit 2

POLICY NUMBER:

**HOMEOWNERS**
**HO 03 62 12 09**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WINDSTORM OR HAIL DEDUCTIBLE – LOUISIANA

### SCHEDULE

| |
|---|
| **Windstorm Or Hail Deductible:** |
| |
| Entry may be left blank if shown elsewhere in this policy for this coverage. |

**A. Definitions**

The following definitions are added for the deductible provided by this endorsement:

1. "Hurricane" means a storm system that has been declared a hurricane by the National Hurricane Center of the National Weather Service.

2. "Named storm" means a storm system that has been declared a named storm by the National Hurricane Center of the National Weather Service.

**B. Applicable Deductible**

The applicable windstorm or hail deductible is either:

1. The dollar amount shown in the Schedule as the Windstorm Or Hail Deductible; or

2. If a percentage is shown in the Schedule, the dollar amount determined by multiplying the Coverage **A** Limit Of Liability shown in the Declarations by the percentage shown as the Windstorm Or Hail Deductible in the Schedule.

**C. Standard Windstorm Or Hail Deductible**

With respect to the peril of windstorm or hail, we will pay only that part of the total of all loss payable under Section **I** – Property Coverages that exceeds the applicable windstorm or hail deductible described in Paragraph **B.** of this endorsement.

Except as provided in Paragraph **D.** of this endorsement, no other deductible in the policy applies to loss caused by the peril of windstorm or hail.

**D. Calendar Year Windstorm Or Hail Deductible**

The following provisions apply only if the "residence premises" is a one- or two-family owner-occupied dwelling:

1. Subject to Paragraph **D.2** of this endorsement, the applicable windstorm or hail deductible described in Paragraph **B.** of this endorsement is a calendar year deductible and applies to all covered windstorm or hail losses:

   a. To property covered under Section **I** – Property Coverages; and

   b. Resulting from one or more "hurricanes" or "named storms" during the same calendar year.

2. With respect to a covered windstorm or hail loss:

   a. Resulting from the first "hurricane" or "named storm" during a calendar year, we will pay only that part of the total of all loss payable under Section **I** – Property Coverages that exceeds the applicable windstorm or hail deductible described in Paragraph **B.** of this endorsement.

   b. Resulting from the second, and each subsequent, "hurricane" or "named storm" during the same calendar year, we will pay only that part of the total of all loss payable under Section **I** – Property Coverages that exceeds the greater of:

      (1) The remaining dollar amount of the applicable windstorm or hail deductible described in Paragraph **B.** of this endorsement for that calendar year; or

© Insurance Services Office, Inc., 2009

Exhibit 2

42

**(2)** The deductible that applies to all perils other than windstorm or hail.

**3.** You must maintain receipts or other records of all covered windstorm or hail losses, resulting from any "hurricane" or "named storm", that are less than the applicable windstorm or hail deductible, and provide us with such receipts or other records as often as we reasonably require, so that we may consider the amount of such losses when adjusting claims resulting from any subsequent "hurricane" or "named storm" during the same calendar year.

**4.** Paragraph **C.** of this endorsement does not apply, and no other deductible in the policy applies to a covered windstorm or hail loss resulting from a "hurricane" or "named storm".

All other provisions of this policy apply.

© Insurance Services Office, Inc., 2009

HO 03 62 12 09

Exhibit 2

**HOMEOWNERS**
**HO 04 16 10 00**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PREMISES ALARM OR FIRE PROTECTION SYSTEM

We acknowledge the installation of an alarm system and/or automatic sprinkler system approved by us on the "residence premises". You agree to maintain this system or systems, for which we have granted a credit, in working order and to let us know promptly of any change, including removal, made to the system(s).

Exhibit 2

44

POLICY NUMBER:

HOMEOWNERS
HO 03 42 01 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE - LOUISIANA
### FOR USE WITH FORMS HO 00 03 AND HO 00 05

**SCHEDULE**

| | These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims made, or the number of locations insured under this endorsement and listed in this Schedule. | |
|---|---|---|
| 1. | Section **I** - Property Coverage Limit Of Liability for the Additional Coverage "Fungi", Wet Or Dry Rot, Or "Bacteria" | $ |
| 2. | Section **II** - Coverage **E** Aggregate Sublimit Of Liability for "Fungi", Wet Or Dry Rot, Or "Bacteria" | $ |
| | Entries may be left blank if shown elsewhere in this policy for this coverage. | |

**DEFINITIONS**

The following definitions are added:

**"Fungi"**

**a.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**b.** Under Section **II**, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

**"Bacteria"**

"Bacteria" means any type, kind or form of bacterium.

**SECTION I - PROPERTY COVERAGES**

**E. Additional Coverages**

Paragraph **10.k.(2)(d)** is deleted in Form **HO 00 05** only.

The following Additional Coverage is added:

**13.** **"Fungi", Wet Or Dry Rot, Or "Bacteria"**

**a.** The amount shown in the Schedule above is the most we will pay for:

**(1)** The total of all loss payable under Section **I** - Property Coverages caused by "fungi", wet or dry rot, or "bacteria";

**(2)** The cost to remove "fungi", wet or dry rot, or "bacteria" from property covered under Section **I** - Property Coverages;

**(3)** The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or "bacteria"; and

**(4)** The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or "bacteria" whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or "bacteria".

**b.** The coverage described in **13.a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

© ISO Properties, Inc., 2004

Exhibit 2

**c.** The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

    **(1)** Number of locations insured under this endorsement; or

    **(2)** Number of claims made.

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I - PERILS INSURED AGAINST

In Form **HO 00 03**:

**A. Coverage A - Dwelling And Coverage B - Other Structures**

Paragraph **2.c.(5)** is replaced by the following:

    **(5)** Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.c.(6)(c)** is replaced by the following:

    **(c)** Smog, rust or other corrosion;

**B. Coverage C - Personal Property**

**12. Accidental Discharge Or Overflow Of Water Or Steam**

Paragraph **b.(4)** is replaced by the following:

    **(4)** Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form **HO 00 05**:

**A.** Under Coverages **A, B** and **C**:

Paragraph **2.d.** is replaced by the following:

    **d.** Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.e.(3)** is replaced by the following:

    **(3)** Smog, rust or other corrosion;

## SECTION I - EXCLUSIONS

Exclusion **A.10.** is added:

**10. "Fungi", Wet Or Dry Rot, Or "Bacteria"**

"Fungi", Wet Or Dry Rot, Or "Bacteria" meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or "bacteria".

This exclusion does not apply:

**a.** When "fungi", wet or dry rot, or "bacteria" results from fire or lightning;

**b.** To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or "Bacteria" Additional Coverage under Section **I** - Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning; or

**c.** With respect to "fungi", wet or dry rot, or "bacteria" that is located on the portion of the covered property that must be repaired or replaced because of direct physical damage caused by a Peril Insured Against.

However, the exclusion shall continue to apply to:

    **(1)** The cost to treat, contain, remove or dispose of "Fungi", Wet Or Dry Rot, Or "Bacteria" beyond that which is required to repair or replace the covered property physically damaged by a Peril Insured Against;

© ISO Properties, Inc., 2004

Exhibit 2

46

(2) The cost of any testing of air or property to confirm the absence, presence or level of "Fungi", Wet Or Dry Rot or "Bacteria" whether performed prior to, during or after removal, repair, restoration or replacement; and

(3) Any increase in loss under Coverage **D** - Loss of Use and Additional Coverage **1.** Debris Removal resulting from **c.(1)** and **(2).**

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or "bacteria" is covered.

## SECTION I - CONDITIONS

Condition **P. Policy Period** is replaced by the following:

**P. Policy Period**

This policy applies to loss or costs which occur during the policy period.

## SECTION II - CONDITIONS

Condition **A. Limit Of Liability** is replaced by the following:

**A. Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

However, our total liability under Coverage **E** for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or "bacteria" will not be more than the Section **II** - Coverage **E** Aggregate Sublimit Of Liability for "Fungi", Wet Or Dry Rot, Or "Bacteria". That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

**1.** Number of locations insured under the policy to which this endorsement is attached;

**2.** Number of persons injured;

**3.** Number of persons whose property is damaged;

**4.** Number of "insureds"; or

**5.** Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage **E** limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "fungi", wet or dry rot, or "bacteria" described in **A.** Limit Of Liability of this endorsement, Condition **B. Severability Of Insurance** is replaced by the following:

**B. Severability Of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section **II** - Conditions **A.** Limit Of Liability. This condition will not increase the limit of liability for this coverage.

All other provisions of the policy apply.

POLICY NUMBER:

**HOMEOWNERS**
**HO 04 10 10 00**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INTERESTS
**Residence Premises**

**SCHEDULE\***

| |
|---|
| Name And Address Of Person Or Organization:<br><br>Effective Date Of Interest: (Optional)<br>Description Of Interest:<br><br><br> |
| Name And Address Of Person Or Organization:<br><br>Effective Date Of Interest: (Optional)<br>Description Of Interest:<br><br><br> |
| \* Entries may be left blank if shown elsewhere in this policy for this coverage. |

In addition to the Mortgagee(s) shown in the Declarations or elsewhere in this policy, the persons or organizations named in the Schedule above also have an interest in the "residence premises".

**CANCELLATION AND NONRENEWAL NOTIFICATION**

If we decide to cancel or not to renew this policy, the persons or organizations named in the Schedule will be notified in writing.

All other provisions of this policy apply.

Exhibit 2

48

HOMEOWNERS
HO 04 96 10 00

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

# <u>NO</u> SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
# <u>LIMITED</u> SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

**A.** "Business", as defined in the policy, means:

  **1.** A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or

  **2.** Any other activity engaged in for money or other compensation, except the following:

   **a.** One or more activities:

    **(1)** Not described in **b.** through **d.** below; and

    **(2)** For which no "insured" receives more than $2000 in total compensation for the 12 months before the beginning of the policy period;

   **b.** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

   **c.** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

   **d.** The rendering of home day care services to a relative of an "insured".

**B.** If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

  **1.** That an "insured" engages in for money or other compensation; and

  **2.** From which an "insured" receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

  the home day care service and other activity will be considered a "business".

**D.** With respect to **C.** above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

  **1.** Described in **A.2.** above, and

  **2.** Engaged in for money by a single "insured";

  may be considered a "business" if the $2000 threshold is exceeded.

**E.** With respect to **A.** through **D.** above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

  **1.** Does not provide:

   **a.** Section II coverages. This is because a "business" of an "insured" is excluded under **E.2.** of Section II – Exclusions.

   **b.** Coverage, under Section I, for other structures from which any "business" is conducted; and

  **2.** Limits Section I coverage, under Coverage C – Special Limits of Liability, for "business" property:

   **a.** On the "residence premises" for the home day care "business" to $2,500. This is because Category **h.** (**e.** in Form **HO 00 08**) imposes that limit on "business" property on the "residence premises";

   **b.** Away from the "residence premises" for the home day care "business" to $500. This is because Category **i.** (**f.** in Form **HO 00 08**) imposes that limit on "business" property away from the "residence premises". Category **i.** does not apply to property described in Categories **j.** and **k.** (**g.** and **h.** respectively in Form **HO 00 08**).

AIC PP 01 11

Americas Insurance Company takes protection and privacy of the personal information you entrust to us very seriously. The Gramm Leach Bailey Financial Services Modernization Act is a law that requires insurance companies to have processes in place that protect the confidentiality of your personal information. We use this personal information to provide you with the best insurance products and services available. Your privacy is important to us and this law reinforces our promise to protect your personal information. This **Privacy Policy** describes our personal information handling practices.

To allow us to serve the needs of our customers and to respond to those needs in a timely manner, Americas Insurance Company may collect information about you or your home and your property. This information is described below in **"The Personal Information We Collect"**.

## AMERICAS INSURANCE COMPANY PRIVACY POLICY

**The Personal Information We Collect** – Americas Insurance Company collects personal information about you in order to conduct business operations, provide customer service, improve existing products and offer new products and to satisfy legal and regulatory requirements.

We may collect the following types of information about you from the indicated sources:

Information we receive directly from you, including information from applications, questionnaires, claim forms, claims interviews or other documents (such as your name, address, drivers' license number, social security number and types of coverage requested).

Information about your transactions with us, our affiliates or others (such as products or services you purchased, account balances and payment history).

Information we receive from consumer reporting agencies or from other non-affiliated sources. This information may include prior loss information, credit reports, motor vehicle reports and demographic information.

Information on your home that we or an inspector from an independent company may obtain by visiting your property to inspect and report on its condition. Photos of your home and premises may be taken. In some instances, if we require additional information, we may need to enter your home to complete this inspection. In all instances, we will contact you to obtain approval and to schedule an appointment prior to the inspection visit.

We do not collect or obtain any personal information from visitors to our web site by the use of an Internet "cookie", an online information collecting device.

**The Personal Information We Share** – Americas Insurance Company may disclose all of the personal information we collect, as described above, within the limitations described below.

**Sharing Personal Information With Others** – Americas Insurance Company may disclose personal information we collect in the normal process of conducting insurance operations to affiliated and non-

Exhibit 2                                        50

affiliated parties for processing, servicing and administering transactions on our behalf, such as insurance producers or agents, businesses that assist us with data processing, reinsurers, appraisers, auditors, claims adjusters, third party administrators and consumer reporting agencies as reasonably necessary in connection with any application, policy or claim involving you. We may also disclose your personal information in response to a subpoena, to detect or prevent fraud or to comply with an inquiry or requirement of a government agency or regulator or as otherwise permitted by law.

**Sharing Personal Information for Joint Marketing Purposes** _Americas Insurance Company may provide information to your insurance agent or broker, who may market insurance products and services on our behalf, and to third parties who perform functions for us. We do not currently share your information with non-affiliate companies that would use it to contact you about their own products and services.

**Confidentiality and Security of Personal Information** _Access to personal information is limited and allowed for business purposes only. The people who may have access to your information, including our employees, affiliates and persons or other organizations that represent us in servicing your policy and claims are obligated to protect your personal information and keep it confidential. Americas Insurance Company maintains physical, electronic and procedural safeguards to protect the security of your personal information.

**Personal Health Information** _Under certain circumstances, we may collect personal health information on customers for underwriting or claims purposes, such as information regarding an accident, disability or injury. Americas Insurance Company does not disclose your personal health information to others for the purposes of marketing to you.

**Personal Information of Former Customers** _Americas Insurance Company's personal information privacy policy applies to former customers.

**Changes in Privacy Policy** _Americas Insurance Company may choose to modify this policy at any time. We will notify customers of any modification of our privacy policy and provide you with a copy of our current privacy policy at least annually.

"Customer" and "you" mean any individual who obtains or has obtained a financial product or service from Americas Insurance Company that is to be used for personal, family or household purposes. This notice applies to customers only.

"Personal Information" means nonpublic personal information, which is defined by law as personally identifiable financial information that you provide or Americas Insurance Company otherwise obtains in connection with a transaction or any service performed for you by Americas Insurance Company. Personal information does not include publically available information as defined by applicable law.

12/2010 AIC Privacy Notice

Exhibit 2                    51

POLICY NUMBER:

**HOMEOWNERS**
**HO 04 46 10 00**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INFLATION GUARD

**SCHEDULE\***

| Percentage Amount: |
| --- |
|  |

**\*Entry may be left blank if shown elsewhere in this policy for this coverage.**

The limits of liability for Coverages **A, B, C** and **D** will be increased annually by the percentage amount that is:

**1.** Shown in the Schedule above; and

**2.** Applied pro rata during the policy period.

Exhibit 2

52

# IMPORTANT NOTICE
# REGARDING REFUNDABLE TAX CREDIT

Louisiana Revised Statute 47.6025 allows a **refundable tax credit by the Department of Revenue** for the Louisiana Citizens Property Insurance Corporation assessments resulting from Hurricanes Katrina and Rita that were paid by you.

The assessment is displayed on your declarations page as the FAIR Plan Assessment Fee.

1. The form to be completed by <u>individuals</u> can be found at the following website (select year and then form R-540INS). It contains instructions on how to file it with the Department of Revenue. If you have any questions, contact the Department of Revenue Call Center at (225) 219-0102.

   **http://revenue.louisiana.gov/sections/taxforms/default.aspx?code=PSN**

2. The form to be completed by <u>business entities</u> can be found at the following website: (select year and then form R-620INS). It contains instructions on how to file with the Department of Revenue. If you have any questions, contact the Department of Revenue Call Center at (225) 219-7462.

   **http://revenue.louisiana.gov/sections/taxforms/default.aspx?code=CIF**

Thank you for being a valued policyholder!

Exhibit 2                                                                 53

POLICY PROVISION:  This Policy jacket with the Policy Declarations, Policy Form and Endorsements issued to form a part thereof, completes the policy as numbered on the Declarations Page.  Whenever your policy is modified, you will receive a dated revision of the Policy Declarations.

IN WITNESS WHEREOF:  In consideration of your paid premium, Americas Insurance Company is proud to extend to you the coverage offered by this insurance contract.

R. Ray Pate Jr., Chairman, President and Chief Executive Officer
Americas Insurance Company

AIC HOJ 01 11

Exhibit 2                                                54