UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STACY MORGAN AND A-PLUS CONTRACTORS, L.L.C. | * | CIVIL ACTION NO. 16-13900 |
| | * | DISTRICT JUDGE MILAZZO |
| VERSUS | | |
| | * | MAG JUDGE: ROBY |
| AMERICAS INSURANCE COMPANY | | |
| | * | |

\* \* \* \* \* \* \* \* \*

**PLAINTIFF'S, STACY MORGAN AND A-PLUS CONTRACTORS, L.L.C.'S, MEMORANDUM IN OPPOSITION TO DEFENDANT, AMERICAS INSURANCE COMPANY'S MOTION TO COMPEL EXAMINATION UNDER OATH AND APPRAISAL AND STAY LITIGAOTIN PENDING APPRAISAL**

**May It Please The Court:**

Now comes plaintiffs, STACY MORGAN AND A-PLUS CONTRACTORS, L.L.C. (hereinafter "the plaintiffs" or "The America's Insureds By Assignment"), who hereby submit the instant Memorandum In Opposition to defendant Americas Insurance Company's (hereinafter "AIC") Motion To Compel Examination Under Oath And Appraisal And Stay Litigation Pending Appraisal. In short, the AIC motion should be denied for the following reasons:

**Why This Motion Should Not Be Granted:**

1) America's has taken contradictory positions in its Court pleadings in an attempt to delay and/or avoid payment to its insured. AIC first demanded an appraisal and examination, and simultaneously argued in Court that plaintiffs were not insureds;

2) The Appraisal Process can no longer be utilized since there is no dispute on the value of the damage. Plaintiffs made the *actual repairs* which amounted to $90,442.54, of which only $46,931.22 was paid by AIC. The incurred expense section of the policy of insurance now governs this fact scenario which is 100% different from AIC cited jurisprudence;

3) The Defense Firm Representing AIC was in active communication with plaintiffs, through counsel, in scheduling the Examination Under Oath ("EUO") prior to filing suit. However, AIC simultaneously took a contradictory position in claiming that the plaintiffs were not insureds under the policy and the EUO was never scheduled. Thus,

AIC had no intention of ever paying this claim in violation of La.R.S. 22:1892 and/or 22:1973.

## I. FACTS AND BACKGROUND

Plaintiffs filed suit with the Civil District Court for the Parish of Orleans on June 14, 2016 against defendant, AIC. The petition and entire claim is based on a valid "Assignment of Benefits" form signed by the America's policyholder Hollis Burton and the owner of A-Plus Contractors, L.L.C. There is no dispute that the assignment of benefits contract is valid between the plaintiffs, and the AIC insured, Hollis Burton.[1] It is also undisputed that plaintiff A-Plus Contractor, L.L.C. was the contractor who performed fire repairs to Hollis Burton's home in 2015.

A-Plus Contractors and Stacy Morgan were paid some portion of their work, but, there remains an outstanding amount of $43,511.32 owed to plaintiffs from Hollis Burton, and by virtue of the assignment of benefits form, from AIC. Moreover, since the previous AOB form was examined by this Court, it is in evidence and is an affidavit of by plaintiffs of what is still owed for the repairs performed at this home.

On March 28, 2016, plaintiffs sent to AIC a demand for payment after being assigned all of the insurance rights from AIC.[2] In response, AIC did two things **which are contradictory to one another** which is indicative of arbitrary treatment and a direct violation of the Louisiana Supreme Court *Kelly* doctrine described *infra*.[3] Simply-put, AIC attempted to both demand an Examination Under Oath of the plaintiffs (recognizing the plaintiffs were insureds) and also

---

[1] *See* Record Document No. 19. This Court ruled in an Order dated February 6, 2017 that the plaintiffs may "step into his [the assignor's] shoes and assert any claims that he may have related to AIC, including breach of contract claims" and bad faith claims.
[2] *See* Exhibit "A" - Demand letter sent by the plaintiffs to AIC demanding payment pursuant to the valid AOB contract.
[3] *Kelly v. State Farm Fire & Cas. Co.,* 2014-1921 (La. 5/5/15).

simultaneously attacked the validity of the Assignment of Benefits agreement and argued plaintiffs were not insureds. First, AIC was attempting to schedule an examination under oath of the plaintiffs (which insurers can do if allowed in the policy) after receiving the demand back in March of 2016. Undersigned counsel and opposing counsel Christine Bergeron with the Monson Law Firm were actively discussing the scheduling of the EUOS in June and July of 2016.[4] However, a mutually convenient date was never selected for the EUO, but an EUO was never disallowed by plaintiff.

Due to continued non-payment by AIC, a lawsuit was then filed in Civil District Court for the Parish of Orleans. Then, on August 23, 2016, after this case was removed to Federal Court, AIC filed their 12(b)(6) Motion To Dismiss in which this Court acknowledge in the later Judgment that AIC was challenging the actual AOB contract.[5] Thus, AIC was attempting to avoid payment at all costs in both arguing that the plaintiffs were insureds but were also not insureds. Based on AIC's own actions described above which is evidencing in documentation and via Court Pleadings, AIC was arguing two different positions which were contradictory, and were clearly done to avoid any type of consideration of payment.[6]

Thus, AIC's actions both prior to and during the pendency of this litigation are arbitrary treatment by AIC in violation of La.R.S. 22:1892 and 22:1973. Specifically, Louisiana Law on

---

[4] *See Exhibit "B"* – Communications between plaintiffs and AIC through counsellors of record in scheduling the EUO.

[5] *See Record Document No. 19* – "This appears to the Court to be a challenge to the validity of the AOB, whereby Burton assigned to Plaintiffs "all remaining benefits for his insurance policy with America's Insurance Company" relative to the 2015 fire claim. As a post-loss assignee, Plaintiffs acquired those rights possessed by the assignor at the time of the assignment, essentially stepping into Burton's shoes."

[6] Plaintiffs will be filing a Motion for Partial Summary Judgment against AIC on the bad faith issues, in particular regard to contradictory positions taken by a Louisiana Regulated Insurance company to obviously avoid payment. This is completely seminal issue which, by research, has never been evaluated by the Judiciary (a Louisiana insurer taking contradictory provisions on whether or not an insured is an actual insured under the policy.)

insurer treatment encompasses all treatment, whether before or during the pendency of any lawsuit. Since this Court ruled on February 6, 2017 that the plaintiffs were, indeed, proper plaintiffs to assert any and all causes of action it may have against AIC, a number of things have happened which violated the *Kelly* doctrine discussed *Infra*.

Now, in particular regard to the request by AIC that it should be allowed to stay this litigation is incorrect for the following reasons:

1) First, there is no dispute as to the value and amount of the loss sustained by the plaintiff in this matter. The plaintiff, who is the assignee of the policy, is the actual contractor who performed the *actual repair work* on the home. This is not a situation in which an "Estimate" has been created which would lead to a dispute with an insurance carrier who would have a competing estimate. The work was done, and was incurred by the plaintiff (the contractor) in repairing this fire damaged home. This renders the application of the appraisal provision misguided and useless. It would merely add unnecessary costs to all parties in this case. The policy has a direct provisions in relation to incurred expenses which now governs this scenario;

2) Second, plaintiffs have never refused to provide an EUO to AIC. By virtue of the attached communications between plaintiffs and AIC, the EUOS were being scheduled on the calendars of both attorneys. An EUO can be performed now, together or immediately prior to any deposition, without any need to stay this matter. This could have been a simple request sent by opposing counsel outside of the need of Court involvement. Thus, the only part of this argument which is being addressed by plaintiffs will be the request that any EUO be done simultaneously with a deposition to avoid the plaintiffs being subjected to two (2) separate examinations and

giving the defendant two bites at the apple, when plaintiffs would only be allowed to question AIC and any witness one (1) time.

## II. LAW AND ARGUMENT

**A. America's, A Louisiana Regulated Insurance Company, Is Required To Treat Its Policyholders In Good Faith. Here, America's Simultaneously Argued That Stacy Morgan and A-Plus Contractors, L.L.C. Were Not Insureds And Also Argued That They Were Subject To An Appraisal And EUO. This Means That AIC Was Attempting Stall Tactics, If Not An Attempt To Avoid Paying This` Claim Throughout This Process.**

A Louisiana insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The Louisiana insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. La. Rev. Stat. Ann. § 22:1973 Under La. R.S. Art. 22:1973 (formerly La. R.S. Art. 22:1220) Specifically, the insurance bad faith statutes state the following:

> A. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A of this Section:
>
> (1) **<u>Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.</u>**
>
> (2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
>
> (3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
>
> (4) Misleading a claimant as to the applicable prescriptive period.
>
> (5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
>
> (6) Failing to pay claims pursuant to R.S. 22:1893 when such failure is arbitrary, capricious, or without probable cause.

B. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings. La. Rev. Stat. Ann. § 22:1973

If after applying the other general rules of construction an ambiguity remains, the ambiguous insurance contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured. This rule of strict construction requires that ambiguous policy provisions be construed against the insurer who issued the policy and in favor of coverage to the insured. *Smith v. Matthews*, 611 So.2d 1377, 1379 (La.1993), Under this rule, "[e]quivocal provisions seeking to narrow the insurer's obligation are strictly construed against the insurer, since these are prepared by the insurer and the insured had no voice in the preparation." *Garcia v. St. Bernard Parish School Bd.*, 576 So.2d 975, 976 (La.1991). LSA-C.C. Art. 2056 codifies this rule of strict construction, providing that "[i]n case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." LSA-C.C. Art. 2056; Civil Law Treatise, supra § 4; see also W. Freedman, 2 Richards on the Law of Insurance § 11:2[f] (6th Ed.1990) (noting that the rule of strict construction is also labeled the doctrine of *contra proferentum*).

### **The Louisiana Supreme Court In *Kelly* Recently Stated The Following About How A Louisiana Insurer Must Act In This State. AIC Has Not Complied With Louisiana Law:**

*Kelly* reasoned:

> the insurer has undertaken the obligation to protect the insured. "[I]n every case, the insurance company is held to a high fiduciary duty to discharge its policy obligations to its insured in good faith-including the duty to defend the insured against covered claims *and to consider the interests of the insured in every settlement.*" *Id.* At 341

> …
>
> Therefore, in light of the jurisprudence and the remedial intent of La. R.S. 22:1973(A), we return to the first clause of the certified question, which asks: Can an insurer be found liable for a bad-faith failure-to-settle claim under subsection A of La. R.S. 22:1973? Having determined that the plain language supports the existence of a cause of action in favor of the insured under La. R.S. 22:1973(A), we answer this question affirmatively *Id.* At 338.
>
> …
>
> In sum, we provide the following answer to the second certified question. An insurer can be found liable under La. R.S. 22:1973(B)(1) for misrepresenting or failing to disclose facts that are not related to the insurance policy's coverage; **the statute prohibits the misrepresentation of "pertinent facts," without restriction to facts "relating to any coverages."** *Id.* At 328

The Court is very much aware of the position of AIC in previously attempting to dismiss this matter in attacking the validity of the Assignment. Now, the Court is aware that AIC also sent out correspondence prior to litigation requesting an EUO and an Appraisal. This activity simply violates *Kelly* in that AIC was misrepresenting pertinent facts to its insureds.

### B. The Demand For Appraisal Is Way Too Late In The Process Since The Work Is Already Done On The Home. AIC Could Have Demanded An Appraisal With Its Original Insured, Hollis Burton, Prior To Any Work Being Performed.

The work on this home was already completed by the plaintiffs (the contractor with the assignment of benefits). That repair number will not change. Thus, utilizing an appraisal of work already done is non-sensical and is simply a way for AIC to stretch out and delay this litigation and increase needless costs to the plaintiffs. Further, AIC has cited numerous cases which are not controlling in any way to this Court. Nowhere does it cite a case in which the plaintiffs were the actual contractor who performed the work on an incurred basis, and then the insurance company could later seek an appraisal of that actual work. All of their cited jurisprudence on the appraisal topic is non-instructive. None of their cited cases deal with an assignment of benefits to a

contractor *who already performed the work* previously subject to the appraisal process. Indeed, the policy states as follows, which is contained on Page 36 of 55 in Record Document NO. 24-5:

> **E. Additional Coverages**
> 2. **Reasonable Repairs** is replaced by the following:
> 2. **Reasonable Repairs**
> We will pay the reasonable cost incurred by you for necessary repairs made solely to protect covered property from further damage if a Peril Insured Against causes the loss. This coverage does not increase the limit of liability that applies to the property being repaired.

Appraisal provisions in insurance contracts are strictly construed. *St. Charles Par. Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.*, 681 F.Supp.2d 748, 754 (E.D. La.2010) *Citing Branch v. Springfield Fire & Marine Ins. Co.,* 198 La. 720, 4 So.2d 806, 809 (1941) The reasonable cost incurred for this fire loss (which is indisputably a covered loss) were the repairs made by the plaintiffs, the assignee of the AIC policy. Thus, the amounts are owed by policy terms. Further, there is nothing left to appraise since the home has been repaired. The appraisal process involves the use of estimates submitted by appraisers for work yet to be completed. *See Long v. Am. Sec. Ins. Co.,* 2010-0026 (La. App. 4 Cir. 11/17/10, 2), 52 So.3d 260, 262, *writ denied,* 2011-0026 (La. 2/18/11), 57 So.3d 336 (ASIC retained an appraiser and notified Mr. Long. ASIC's appraiser's *estimate* totaled $116,932.10. Substantially higher, Mr. Long's appraiser's *estimate* totaled $513,335.07); *Dufrene v. Certain Interested Underwriters at Lloyd's of London Subscribing to Certificate No. 3051393*, 11-1002 (La. App. 5 Cir. 3/27/12, 7), 91 So.3d 397, 401, *writ denied,* 2012-0930 (La. 6/15/12), 90 So.3d 1065 (written submissions by the appraisers for each party to the Umpire may consist of reports, *estimates*, photographs and/or other documents illustrating *the scope of damages found and the cost of repair of those damage*).

The Honorable Sarah Vance stated the following about appraisals in the case in *St. Charles Par. Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.*, 681 F.Supp.2d 748, 760 (E.D. La.2010), in which the matter before her dealt with challenges to an appraisal award based on submitted estimates:

> Defendant points to three alleged errors in the award. First, it claims that the award relies upon an **estimate to repair the roof** of the hospital that totals over one million dollars. It notes, however, that the supporting documentation reveals an estimate for approximately $840,000. Defendant points to O'Leary's deposition testimony, in which O'Leary stated that the original **estimate** from the roofing company was $840,000, but that the company later provided a revised estimate that reflected the larger figure. O'Leary Deposition, R. Doc. 83, Ex. 7 at 202–208. He did not have a copy of this later estimate, and defendant argues that it is not to be found in any of the documentation that was exchanged during the appraisal process and subsequent court proceedings.

Moreover, the decision cited by AIC from the Honorable Jay Zainey in the *America's Insurance Company v. Billie Jean Haynes and Delvese Haynes* matter dealt with an un-repaired home, which allowed for two appraisers to inspect the home and create estimates of the loss for those inspected damages.[7] Thus, that is a completely difference factual scenario and not binding on the instant fact pattern. Simply-put, the instant facts illustrate that the work was already done on this home by the plaintiffs. There is nothing left to inspect or evaluate. The amount of the repair was incurred by the plaintiffs, which mandates payment under the incurred expense section of the insurance policy on Page 36 of 55 in Record Document NO. 24-5. That section of the policy governs this situation. There is no possibility for estimates to be created from separately hired appraisers since the work was already done.  AIC could have demanded an appraisal long ago when the loss occurred and *prior* to repair, yet, it failed to do so rendering the appraisal provision of the policy meaningless.

---

[7] It should be noted that AIC actually sued its own policyholders in that matter, with case No. 2015-6232. Undersigned counsel is representing the Haynes in that matter. The home was not yet fully repaired when the appraisal was performed after Judge Zainey ordered the appraisal.

To force the appraisal process now would be procedurally deficient, and add costs to the plaintiffs which have already been damaged in not being paid for the incurred work.  Although AIC is correct in its brief that appraisals are allowed in policies and enforceable in the State, none of those cases, and, to the knowledge of plaintiff counsel, no decision exists requiring an appraisal to be done on completely performed work. That would be an absurd reading of the policy of insurance and yield absurd results (the plaintiffs paying an appraiser to tell the plaintiffs that its incurred work was incurred). LSA-C.C. Art. 2056 codifies this rule of strict construction, providing that "[i]n case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." LSA-C.C. Art. 2056; Civil Law Treatise. In reading the appraisal clause, and in reading all of the jurisprudence cited herein which involves *estimates and inspections of damages*, no appraisal can be performed, now, on work already completed for a loss which occurred back in 2015. That is simply against the goals of the appraisal process which is utilized after the loss occurs, and before the repair work is completed. Moreover, it is completely impossible for any appraiser to go back in time and view the home in the post-loss, fire damaged, pre-repaired condition. It simply does not work.

### III. CONCLUSION

**WHEREFORE**, defendants, STACY MORGAN AND A-PLUS CONTRACTORS, L.L.C., respectfully request that this Court deny America Insurance Company's Motion To Compel Examination Under Oath and Appraisal and Stay Litigation Pending Appraisal. The instant factual scenario is completely different than a typical appraisal situation. The repair work has already been completed. By virtue of the policy of insurance, there is nothing left to inspect by newly hired appraisers who, by law, would be required to submit estimates for un-performed

repair work. Thus, since the work has actually been incurred, this triggers the incurred expense section of the policy cited in this memorandum. To order the appraisal, now, would add excessive costs to this matter against the plaintiffs (who have not been fully paid) in being required to hire an appraiser to then tell the plaintiffs that it incurred and performed the work. That is absurd. Further, the plaintiffs have never objected to providing an Examination Under Oath or deposition. Plaintiffs, however, request an Order from the Court requiring any formal examination to be done only one (1) time, on one (1) day to prevent the defendant from getting two (2) attempts to depose the plaintiffs. To allow otherwise would be prejudicial to the plaintiff.

Respectfully submitted:

LAHATTE LAW FIRM, L.L.C.

/s Joseph "Joey" F. LaHatte III
_____

**Joseph "Joey" F. LaHatte, III No. 31224**
4405 Zenith Street Suite A
Metairie, Louisiana 70001
Telephone:   (504) 309-2996
Facsimile:   (855) 733-8180
joey@lahattelaw.com
Attorney for Stacy Morgan and A-Plus Contractors, L.L.C.

## CERTIFICATE OF SERVICE

I hereby certify by my signature that a copy of the foregoing pleading has been served on counsel for all parties electronically and is available for viewing or downloading from the ECF system, or by placing same in the United States mail to, all parties listed below, those who have not received electronic notification, postage prepaid, addressed to their respective offices, this 9th day of May, 2017.

/s Joseph "Joey" F. LaHatte III
_____
JOSEPH "JOEY"F. LAHATTE, III